UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BREN INSURANCE SERVICES, INC., d/b/a ACTION PHARMACEUTICAL CONSULTING, a California corporation, | ) ) ) ) | CASE NO. 5:20-cv-1802 |
| PLAINTIFF, | ) ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION** |
| ENVISION PHARMACEUTICAL SERVICES, LLC f/k/a ENVISION PHARMACEUTICAL SERVICES, INC. d/b/a ENVISIONRX d/b/a ELIXIR RX, an Ohio limited liability company, and CAROL BAILEY, an individual, | ) ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion to dismiss filed by defendant Carol Bailey ("Bailey"). (Doc. No. 49 ["Mot."].) Plaintiff Bren Insurance Services, Inc., d/b/a Action Pharmaceutical Consulting ("APC") filed an opposition (Doc. No. 50 ["Opp'n"]), and Bailey filed a reply (Doc. No. 56 ["Reply"]). For the reasons discussed herein, the Court finds that it cannot assert personal jurisdiction over Bailey.

**I.  BACKGROUND**

APC initiated this action on August 13, 2020, against one defendant—Envision Pharmaceutical Services, LLC ("Envision")—alleging a single claim for breach of contract. (Doc. No. 1 ["Compl."].) After some written discovery, APC filed a first amended complaint on December 27, 2021, adding Bailey as a defendant to this litigation. (Doc. No. 34 ["FAC"].) In the first amended complaint, APC alleges that Bailey is liable for intentional interference with contractual relations, namely, APC's contract with Envision. (*Id.* ¶¶ 28–38.) Bailey is a resident

of the State of Texas and has been a resident of the State of Texas at all relevant times. (*Id.* ¶ 3.) APC is a corporation organized under the laws of the State of California, with a principal place of business in California. (*Id.* ¶ 1.) Envision is a limited liability company organized under the laws of the State of Ohio, with a principal place of business in Ohio.[1] (*Id.* ¶ 2.)

Envision provides "Pharmacy Benefit Management Services" to customers, referred to as "Sponsors." (*Id.* ¶ 10.) APC alleges that, effective December 1, 2008, APC and Envision executed a written agreement (the "Agreement") under which APC agreed to provide "knowledge and expertise" in marketing Envision's Pharmacy Benefit Management Services to Sponsors. (*Id.* ¶¶ 9–10.) The Agreement provided that Envision would compensate APC for certain Sponsors that APC successfully induced into using Envision's Pharmacy Benefit Management Services. (*Id.* ¶¶ 11, 16.) APC alleges that it induced "multiple Sponsors" to use Envision's Pharmacy Benefit Management Services, including, as relevant to this motion, the City of Coppell and Smith County. (*Id.* ¶¶ 12, 25.)

APC alleges that Bailey was aware of the Agreement because Bailey was a sales consultant with APC from approximately 2008 until 2015. (*Id.* ¶ 30.) APC alleges that Bailey "intentionally procured Envision's breach of the Agreement by getting Envision to not pay APC on the City of Coppell and Smith County accounts[]" based on "false justifications" that Bailey provided to Envision and its insurance broker (Brinson). (*Id.* ¶¶ 31–32; Doc. No. 49-1, Declaration of Carol Bailey ("Bailey Decl.") ¶ 9.)

---

[1] APC did not allege in its first amended complaint the citizenship of Envision's members and sub-members, as required. *Akno 1010 Mkt. St. St. Louis Mo. LLC v. Pourtaghi*, 43 F.4th 624, 627–27 (6th Cir. 2022). However, based on prior pleadings, the Court has no reason to doubt that the citizenship of the parties is properly diverse. (Compl. ¶ 3; *see also* Answer (Doc. No. 13) ¶¶ 2–3 ("Envision admits that Rite Aid is a Delaware corporation with a place of business in Pennsylvania . . . . Envision admits [Envision] is an Ohio LLC with its principal place of business in Ohio, that its sole member is Envision Pharmaceutical Holdings LLC, that Envision Pharmaceutical Holdings LLC is a Delaware LLC with a place of business in Twinsburg, Ohio, that Hunter Lane, LLC is the sole member of Envision Pharmaceutical Holdings LLC with a place of business in Pennsylvania, and that Rite Aid is Hunter Lane, LLC's sole member).")

The core of APC's tortious interference claim against Bailey stems from two communications Bailey had with persons in Texas concerning these two APC-Envision accounts in Texas. (FAC ¶¶ 34–35; Bailey Decl. ¶¶ 11–12.) One of these communications was an email to Texas resident Leo Gutierrez, who worked for a Texas company (Brinson), which was Envision's insurance broker. (FAC ¶ 34; Bailey Decl. ¶ 11.) The other communication was a phone call with Texas resident Glenn Jasper, who worked for Envision. (FAC ¶ 35; Bailey Decl. ¶ 12.) Beyond these two communications alleged in the first amended complaint, APC points to four additional communications in its opposition to Bailey's motion: (1) an email to Texas resident and Brinson employee Skip Roark concerning Bailey's compensation from Envision (Opp'n at 14[2]); (2) an email sending her W-2 to Texas resident and Envision employee Glenn Jasper (*id.* at 15); (3) an email between Brinson and the City of Coppell changing the consultant on the Envision-City of Coppell contract to Bailey (*id.*); and (4) an email from Bailey to Texas resident and Brinson employee Leo Gutierrez attaching the amended Envision-City of Coppell contract (*id.*). At all relevant times, Skip Roark, Leo Gutierrez, and Glenn Jasper were all residents of the State of Texas. (Bailey Decl. ¶¶ 9, 11, 12.)

APC alleges that Bailey took these actions with the specific intention of replacing APC as the broker for Envision's accounts with the City of Coppell and Smith County. (FAC ¶¶ 31, 33; *see also id.* ¶¶ 21–22, 26 (alleging Envision breached the Agreement as to these two accounts only).) Both the City of Coppell and Smith County are located in the State of Texas. (Bailey Decl. ¶ 8.) While APC contends generally in its opposition to Bailey's motion that Bailey sought to "create[e] a continuing obligation with Envision through Ohio[]" by replacing APC as Envision's

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court.

3

broker, (Opp'n at 13), there are no allegations that Bailey intentionally interfered with, or attempted to interfere with, any APC-Envision accounts in Ohio. (*See* FAC ¶ 31.)

## II. STANDARD OF REVIEW

Bailey seeks dismissal for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). APC bears the burden of establishing that this Court has personal jurisdiction over Bailey. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In the face of Bailey's supported motion to dismiss for lack of personal jurisdiction, APC may not rest upon its pleadings but must, by affidavit or otherwise, set forth specific evidence supporting personal jurisdiction over Bailey in this Court. *Id*.

When deciding Bailey's Rule 12(b)(2) motion the Court may, in its discretion: (1) decide the motion on affidavits alone, (2) permit discovery in aid of deciding the motion, or (3) conduct an evidentiary hearing to resolve any apparent factual questions. *Id*. Having reviewed the parties' briefs and declarations attached thereto, the Court concludes that a hearing will not assist the Court and that Bailey's Rule 12(b)(2) motion may be resolved on the parties' submissions. When the Court elects to decide the motion upon the written submissions, it must view the declarations, pleadings and related documentary evidence in the light most favorable to the plaintiff.[3] *Bird v. Parsons*, 289 F.3d 865, 871–72 (6th Cir. 2002).

Where, as here, the district court decides the issue solely on the basis of written materials and affidavits, "the burden on the plaintiff is relatively slight, . . . and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal[.]" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (internal quotation marks

---

[3] That said, the Court is not precluded from considering undisputed factual representations by Bailey that are consistent with APC's allegations and representations. *Kerry Steel, Inc v. Paragon Indus., Inc.*, 106 F.3d 147,153 (6th Cir. 1997).

and citations omitted). "Dismissal [is] only proper if all of the specific facts [plaintiff] alleged collectively fail[ ] to state a *prima facie* case for jurisdiction under the appropriate standards." *Theunissen*, 935 F.2d at 1459; *see also Kerry Steel*, 106 F.3d at 149.

APC invokes this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (diversity jurisdiction). (FAC ¶ 4.) To assert personal jurisdiction over a defendant, a federal court with diversity jurisdiction must find that (1) defendant is amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction will not deny defendant due process. *See Theunissen*, 935 F.2d at 1459. Jurisdiction under Ohio's long-arm statute is governed by Ohio Rev. Code § 2307.382 and the due process inquiry requires determining "whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. State of Wash.,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

### III. DISCUSSION

Bailey's instant motion moves to dismiss APC's sole claim against Bailey—intentional interference with contractual relations—for lack of personal jurisdiction. Bailey contends that she is not subject to personal jurisdiction in Ohio because she is a Texas resident and APC has not alleged sufficient contacts between Bailey and Ohio related to its intentional interference claim. (Mot. at 1.)  This Court agrees.

#### A. Ohio's Long-Arm Statute

In April 2021—before APC filed its first amended complaint—the Ohio General Assembly extended Ohio's long-arm statute to the limits of the United States Constitution. Ohio Rev. Code § 2307.382(C) ("[A] court may exercise personal jurisdiction over a person on any basis consistent

with . . . the United States Constitution."). Jurisdiction is determined as of the commencement of an action. *See Smith v. Swaffer*, 566 F. Supp. 3d 791, 806 (N.D. Ohio 2021) (citing *Mollan v. Torrance*, 22 U.S. 537, 539–40, 6 L. Ed. 154 (1824)). An amended complaint adding an additional defendant commences a new action, unless the amendment can be said to relate back to the original complaint. *See Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 405–06 (6th Cir. 2007); *see also United States v. Martinez*, 195 U.S. 469, 473, 25 S. Ct. 80, 49 L. Ed. 282 (1904) ("[A] party brought into court by an amendment, and who has, for the first time, an opportunity to make defense to the action, has a right to treat the proceeding, as to him, as commenced by the process which brings him into court."); *Meiman v. Kenton Cty.*, No. 10-156-DLB, 2011 WL 721478, at *5 (E.D. Ky. Feb. 22, 2011) (explaining that even outside a statute-of-limitations analysis, "the relation-back concept is applied as an analytic tool, a way of determining whether amended pleadings so change the claims or parties as to be a new civil action, rather than a 'workaday change' that continues a pending action." (quoting *Werner v. KPMG LLP*, 415 F. Supp. 2d 688, 700 (S.D. Tex. 2006))). Under Federal Rule of Civil Procedure 15, an amendment adding an additional defendant does not relate back to the original complaint unless the added party both (1) received such notice of the action that it will not be prejudiced in defending on the merits; and (2) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. Fed. R. Civ. Pro. 15(c)(1)(C).

APC does not contend there was any "mistake concerning the proper party's identity" as required by Rule 15. Rather, APC added Bailey as an additional defendant after written discovery. (*See* Opp'n at 5.) Thus, APC's first amended complaint does not relate back to the original complaint and instead commenced a new action against Bailey as of December 27, 2021. As a

result, Ohio's amended long-arm statute (Ohio Rev. Code § 2307.382(C)) governs this case.[4] And because Ohio's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, this Court's inquiry is confined to whether exercising personal jurisdiction over Bailey "comports with traditional notions of fair play and substantial justice." *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021).[5]

### B. Due Process Analysis

In deciding whether this Court may assert personal jurisdiction over Bailey, "the court must determine whether [the] exercise of [personal] jurisdiction comports with constitutional due process." *Air Prods. & Controls, Inc.*, 503 F.3d at 550. Personal jurisdiction exists in two forms: "general" and "specific." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). While APC concedes that it "is not arguing that this Court may have 'general jurisdiction' over Bailey," APC contends that Bailey is subject to specific jurisdiction in Ohio. (Opp'n at 6.) Specific

---

[4] Both parties suggest in their briefing that December 27, 2021, is the operative date on which this action commenced as to defendant Bailey and, thus, Ohio's amended long-arm statute governs this Court's personal jurisdiction analysis. (Mot. at 9; Opp'n at 9; Reply at 2.)

[5] The Court recognizes that at least one federal court in Ohio found that Ohio's recent long-arm statute amendment (Ohio Rev. Code § 2307.382(C)) relates to general jurisdiction only, which is not applicable in this case. *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, No. 3:21-cv-14, 2021 WL 1964613, at *2 n.2 (S.D. Ohio May 17, 2021). Even if that were the case, or even if APC's first amended complaint related back to the original complaint, this Court would still not have personal jurisdiction over Bailey under Ohio Rev. Code § 2307.382(A).

Ohio Rev. Code § 2307.382(A) provides for personal jurisdiction over a non-resident if that person's conduct falls within one of the nine bases for jurisdiction listed in the statute. APC contends the only basis which Bailey may be subject to personal jurisdiction is subsection (A)(6), which provides for personal jurisdiction over a person for a cause of action arising from that person's "[c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state." (Opp'n at 9–10.) Ohio Rev. Code § 2307.382(A)(6) "authorizes courts to exercise personal jurisdiction over non-resident defendants who commit tortious acts outside Ohio where the defendants might reasonably expect that *someone in Ohio* would be injured." *Ohio Lending Consultants, LLC v. Sec. Cap. Holdings, Inc.*, No. 1:14-cv-1358, 2014 WL 5162285, at *5 (N.D. Ohio Oct. 14, 2014) (emphasis added).

Here, APC contends that "[t]he Court can broadly interpret . . . section (A)(6) . . . to find that Bailey committed acts causing tortious injury to APC in Ohio – i.e., breach of the [Agreement]." (Opp'n at 10.) However, as discussed more fully below, there are no allegations that APC, a California company, suffered any injury *in* Ohio from lost business accounts located in Texas. *See infra* III.B.1.b. Rather, APC admits, any harm felt as a result of Bailey's actions was that APC "would stop receiving payments [in California] *from* Ohio." (Opp'n at 18 (emphasis added).) Further, there are no allegations that Bailey would reasonably expect APC, a company she knew to be at home in California, to be injured in Ohio. Thus, Ohio Rev. Code § 2307.382(A)(6) is inapplicable and does not confer personal jurisdiction over Bailey in Ohio.

7

jurisdiction exists when a plaintiff's claims arise out of or relate to a defendant's contacts with the forum state; that is, there is a nexus between a defendant's contacts in the forum state and plaintiff's claim. *Kerry Steel*, 106 F.3d at 149; *Conti*, 977 F.2d at 981.

For a court to exercise personal jurisdiction over a non-resident defendant, consistent with the Due Process Clause, the defendant must have sufficient minimum contacts with the forum state such that the exercise of jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.,* 326 U.S. at 316 (internal quotation marks omitted). The Sixth Circuit has set forth a three-part test for analyzing the issue of specific personal jurisdiction: (1) the defendant must purposefully avail herself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

1. **Purposeful Availment**

The "purposeful availment" prong is the *"sine qua non"* for personal jurisdiction. *S. Mach. Co.*, 401 F.2d at 381–82. Requiring that the defendant purposefully avail herself of the privilege of acting in the forum state ensures that she will not be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721–22 (6th Cir. 2000).

APC contends that the purposeful availment prong is satisfied by either (1) Bailey's communications with Envision representatives and partners "demonstrating her ultimate goal: to replace APC as the consultant for Envision and get paid through [Envision's] main office in

8

Ohio[,]" (Opp'n at 14; *see also* 13–18), or (2) the "effects test" articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) (*id.* at 12; *see also* 18–20).

### a. Bailey's Communication and Agreement with Envision

To establish a *prime facie* case for personal jurisdiction over an out-of-state defendant based on that defendant's contract with an in-state company, a plaintiff in the Sixth Circuit must allege facts to suggest that the defendant intended to reach into the forum state purposely, not just by happenstance. *See, e.g.*, *Calphalon Corp.*, 228 F.3d at 723; *see also GeoData Sys. Mgmt., Inc., v. Am. Pac. Plastics Fabricators, Inc.*, No. 1:14-cv-2407, 2015 WL 3408092, at *3-4 (N.D. Ohio May 27, 2015) ("[A]s in *Calphalon,* the telephone and email contacts [d]efendants had with Ohio occurred because [plaintiff] happens to be located here[.]"). If the only connection between an out-of-state defendant and the forum state is the mere fact that the defendant contracted and communicated with a company who chose the forum state as its home, then asserting personal jurisdiction over the defendant in the forum state is improper. *E.g.*, *Calphalon*, 228 F.3d at 723; *see also Kerry Steel, Inc.*, 106 F.3d at 151 ("[M]erely entering into a contract" with a company in the forum state "would not, without more, establish sufficient minimum contacts[.]" (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996))); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ("[A]n individual's contract with an out-of-state party *alone*" cannot "automatically establish sufficient minimum contacts." (emphasis in original)); *id.* at 479 ("[P]rior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.").

9

For example, in *Calphalon Corp. supra*, an out-of-state defendant entered into a contract with an Ohio company. Under the terms of that contract, the out-of-state defendant agreed to promote the sales of the Ohio company's products in Minnesota, Iowa, North Dakota, South Dakota, and Nebraska. 228 F.3d at 720. In asserting that the court had personal jurisdiction over the defendant in Ohio, the plaintiff pointed to defendant's association with the Ohio company through the contract, that agreement's choice of law provision (Ohio), defendant's duty to report market conditions to plaintiff, telephone and fax contacts defendant had with plaintiff in Ohio, two trips that defendant took to visit plaintiff in Ohio, and a letter that defendant sent to Ohio threatening litigation. *Id.* at 722. The court found that the parties' agreement centered on defendant promoting plaintiff's products in Minnesota, Iowa, North Dakota, South Dakota, and Nebraska but "performance of the agreement was not focused on exploiting any market for [plaintiff's products] in the state of Ohio." *Id.* at 723. The court also found that defendant's "phone, mail, and fax contact" with the plaintiff in Ohio and defendant's "physical visits there occurred solely because [plaintiff] chose to be headquartered in Ohio, not because [defendant] sought to further its business and create 'continuous and substantial' consequences there." *Id.* The court noted that "[a]rguably, [defendant] would have served as [plaintiff's] representative in the designated states, regardless of [plaintiff's] base of operation. Thus, [defendant's] contacts were precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." *Id.*

APC has not pointed to any facts to support the bare contention asserted in its opposition brief that Bailey reached into Ohio with the intention of establishing "continuing obligations" *in Ohio*. (Opp'n at 13, 17.) APC alleges no facts that suggest Bailey intended to "exploit" any market in Ohio by performing services here. *See Int'l Tech. Consultants v. Euroglas*, 107 F.3d 386, 395

(6th Cir. 1997) (finding no personal jurisdiction over defendant who was not attempting to "exploit any market for its products" in the forum, and it was "purely fortuitous" that the plaintiff-company "happened to have a [forum-state] address"); *GeoData Sys. Mgmt.*, 2015 WL 3408092, at *3-4 (finding no facts suggesting that defendants "sought to more broadly exploit a market for its products in [the forum] state, or to create continuous or systematic contacts here."). Rather, APC alleges that Bailey took actions to replace APC as the consultant on two Envision accounts, both of which are located in Texas. (FAC ¶¶ 33-35; Bailey Decl. ¶ 8.) Thus, like the defendant in *Calphalon*, the only alleged connection between Bailey and Ohio is the fact that Bailey entered into a contract with Envision and Envision "chose to be headquartered in Ohio, not because [Bailey] sought to further its business and create 'continuous and substantial' consequences here." *See Calphalon*, 228 F.3d at 723. And the fact that Bailey received her contract approval and payments from Envision personnel and accounts in Ohio "is the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." (Opp'n at 14.) *See Calphalon*, 228 F.3d at 723. APC has failed to establish that Bailey's contract and/or communications with Envision are sufficient to show that Bailey purposeful availed herself in Ohio.

  b. **The Effects Test**

APC alternatively attempts to establish Bailey's purposeful availment through the "effects test" articulated by the Supreme Court in *Calder v. Jones*. (Opp'n at 18.) In *Calder*, the plaintiff sued two Florida-based writers based upon an article that they authored for the National Enquirer magazine. The Supreme Court found that the writers were amenable to jurisdiction in California because "California [was] the focal point both of the story and of the harm suffered." 465 U.S. at 789. The Sixth Circuit has "applied *Calder* narrowly" by evaluating whether a defendant expressly

11

aimed its tortious conduct at the forum and whether the forum state was the focus of defendant's activities out of which the suit arises. *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 n.1 (6th Cir. 2005) (collecting cases). Articulated another way, to satisfy *Calder*'s "effects test", a plaintiff must show that the defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Thompson v. Moore*, 5:09-cv-2033, 2009 WL 3378242, at *3 (N.D. Ohio Oct. 15, 2009).

Here, *Calder*'s effects test is distinguishable. Even accepting as true APC's contention that communications Bailey had while in Texas with Texas residents Skip Roark, Leo Gutierrez, and Glenn Jasper were "intentional acts" somehow "expressly aimed at the forum state" (Ohio), the brunt of any harm caused by Bailey's acts was not felt in Ohio, as required by *Calder*.

The lack of any alleged harm suffered in Ohio also distinguishes the present case from other tortious interference actions where courts found an out-of-state defendant was subject to personal jurisdiction in Ohio. For example, in *Omega Cable & Commc'ns, Inc. v. Time Warner, Inc.*, 5:05-cv-1780, 2006 WL 2077035 (N.D. Ohio July 24, 2006), defendant Texas Cable told defendant Time Warner Cable's Northeast Ohio Division ("TWNO") that plaintiff Omega (an Ohio company) engaged in false billing in connection with a contract between TWNO and Omega. *Id.* at *2. Texas Cable also advised TWNO to terminate its contract for services in Ohio with Omega. *Id.* Shortly thereafter, TWNO ended its contractual relationship with Omega predicating the termination, in part, on false billing. *Id.* In response, Omega brought suit in Ohio alleging tortious interference with business relations. *Id.* The defendants moved to dismiss for lack of personal jurisdiction on grounds that Texas Cable contacted TWNO from Texas. *Id.* The Court denied defendants' motion and held that "Omega properly state[d] a prima facie case that Texas

Cable's out-of-state conduct caused tortious injury to Omega in Ohio." *Id.* at \*3. The Court also concluded that Texas Cable "reasonably expected its out of state conduct to injure Omega in the state of Ohio" where Texas Cable interfered with an Ohio's company's contracted accounts in Ohio. *Id.* at \*3.

Similarly, in *J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08-cv-977, 2009 WL 385611 (N.D. Ohio Feb. 13, 2009), the plaintiff, (a company headquartered in Ohio), filed suit against defendants (a California company and three of its employees), for six claims, including tortious interference with business relations. *Id.* at \*1. Plaintiff alleged that the defendants contacted some of plaintiff's corporate sponsors and asked them to sponsor defendant and forgo or reduce sponsoring plaintiff. *Id.* at \*3. On defendants' motion to dismiss for lack of personal jurisdiction, the court found that the court could exercise jurisdiction over the defendants in Ohio because defendants "knew [the sponsors] had contractual relationships with the Ohio-based [p]laintiff" and thus, likely "knew that [their] conduct would have consequences in Ohio." *Id.* at 20.

The same is not true here. As an initial matter, APC is a California company with no alleged presence in Ohio. (FAC ¶ 1.) Further, APC does not allege that Bailey interfered with any APC–Envision accounts located in Ohio. The effect of Bailey's emails was, as APC alleges, to interfere with two Texas-based accounts. (*Id.* ¶ 31.) And while APC has alleged it suffered injury in the form of lost revenue (*see id.* ¶ 37), APC has not alleged any facts to suggest that it maintains a bank account in Ohio such that its lost revenue would have any effect on Ohio's commerce. Rather, as a California company (*id.* ¶ 1), APC admits that the harm felt as a result of Bailey's alleged tortious interference was that APC "would stop receiving payments [in California] *from* Ohio." (Opp'n at 18 (emphasis added).) APC has not alleged or articulated any harm it suffered in Ohio as a result of Bailey's actions. Thus, *Calder*'s effects test cannot form the basis of personal

13

jurisdiction over Bailey either and, as a result, APC has filed to establish even a *prime facie case* for personal jurisdiction over Bailey in Ohio.

### 2. Arises From

Even if APC had established that Bailey purposefully availed herself in Ohio, APC must also demonstrate that "the cause of action . . . arise[s] from the defendant's activities" in Ohio—and it has not done so. *S. Mach. Co.*, 401 F.2d at 381. The "arising from" requirement is satisfied when "the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon*, 228 F.3d at 723–24. APC alleges two specific communications as the basis of its tortious interference claim against Bailey. (FAC ¶¶ 34–35.) Both communications occurred in Texas between residents of Texas. (Bailey Decl. ¶¶ 11–12.) Thus, APC has failed to allege any activities by Bailey in Ohio that formed the basis of APC's tortious interference claim.

### 3. Reasonableness

Finally, even if APC had satisfied the purposeful availment and arising from prongs, APC has not established that it would be reasonable for this Court to assert personal jurisdiction over Bailey. The reasonableness prong of the *Southern Machine* test asks whether "the acts of the defendant or consequences caused by the defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach., Co.*, 401 F.2d at 381. The factors relevant to the reasonableness inquiry include, "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe, Inc*, 89 F.3d at 1268. For all the reasons discussed above, this Court finds it would be unreasonable to exercise personal jurisdiction over Bailey in Ohio because (1) her only connection with Ohio is that she entered into a contract and communicated with a company who chose to be at home here;

(2) she is not alleged to have performed any work in Ohio; and (3) her alleged tortious interference is not alleged to have caused any harm to any person or economy in Ohio.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that it cannot assert personal jurisdiction over Bailey. The Court must now decide whether to (1) dismiss the claim against Bailey; (2) transfer the claim against Bailey to the United States District Court for the Northern District of Texas; or (3) transfer the entire case to the United States District Court for the Northern District of Texas. *See* 28 U.S.C. § 1404(a). To assist the Court in its determination, APC shall file a brief by October 19, 2022, addressing this issue. Any defendant may file a response by October 26, 2022.

**IT IS SO ORDERED**.

Dated: October 5, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**